**The below described is SIGNED.**

**Dated: December 23, 2011**

_____
**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**



_____

_____

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re: | Bankruptcy No.  10-37050 |
| MT. JORDAN LIMITED PARTNERSHIP, | Chapter 11 |
| Debtor. | Hon. R. Kimball Mosier |

**FINDINGS AND CONCLUSIONS REGARDING CONFIRMATION OF**
**DEBTOR'S PLAN OF REORGANIZATION**
_____

The matter before the Court is the *Debtor's Amended Plan of Reorganization Dated August 31, 2011, as Modified November 29, 2011* (the "Plan"), which was filed with the Court as "Exhibit A" to the *Notice of Modifications Dated November 29, 2011 to Debtor's Amended Plan of Reorganization Dated August 31,* 2011 [Docket No. 153].  On December 22, 2011, the Court conducted a hearing to consider confirmation of the Plan (the "Confirmation Hearing").  At the Confirmation Hearing, Steven C. Strong and Matthew M. Boley appeared on behalf of Mt. Jordan Limited Partnership (the "Debtor"), and other appearances were noted on the record.

At the hearing, the Court received the testimony of G. Lyn Kimball and Paul Thorndsen by proffer and without objection.  The Debtor also offered, and the Court received, Exhibits 1 and 2.

Having reviewed and considered the Plan, the Debtor's *Memorandum of Law in Support of Debtor's Plan of Reorganization and in Response to Zions Bank's Objections* [Docket No. 174], other papers filed concerning the Plan, the representations of counsel and evidence received at the Confirmation Hearing, and other relevant matters of record in this case, **THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:[1]**

A. <u>Exclusive Jurisdiction; Venue; Core Proceeding</u>.  This Court has jurisdiction over the Bankruptcy Case[2] pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

B. <u>Judicial Notice</u>.  This Court takes judicial notice of the docket of the Bankruptcy Case maintained by the Bankruptcy Court, including, without limitation, all pleadings, papers and other documents filed, all orders entered, and the transcripts of, and all minute entries on the docket indicating the evidence and arguments made, proffered or adduced at the hearings held before the Court during the pendency of the Bankruptcy Case.

C. <u>Transmittal and Mailing of Materials; Notice</u>.  The Debtor filed a prior version of the Plan, entitled *Debtor's Amended Plan of Reorganization Dated August 31, 2011* (the "August 31 Plan"), on August 31, 2011 [Docket No. 94].  The confirmation hearing on the August 31 Plan was initially scheduled for November 30, 2011 (the "Initial Confirmation Hearing").  All due, adequate, and sufficient notices of (a) the filing of the August 31 Plan, (b) the Initial Confirmation Hearing, and (c) the deadlines for voting on and filing objections to the August 31

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  <u>See</u> Fed. R. Bankr. P. 7052.

[2] Capitalized terms used but not otherwise defined herein are defined in the Plan.

{00135926.DOCX / }            2

Plan, were given to all known holders of Claims and/or Equity Interests in accordance with the Bankruptcy Rules and the procedures set forth in the Court's *Order Approving Disclosure Statement and Solicitation Procedures* [Docket No. 118] (the "Procedures Order"). The Disclosure Statement, August 31 Plan, and ballots were transmitted and served in substantial compliance with the Bankruptcy Rules and the Procedures Order upon Creditors entitled to vote on the August 31 Plan, and such transmittal and service were adequate and sufficient. The only objection timely filed to confirmation of the August 31 Plan was by Zions First National Bank ("Zions Bank"); no other Creditors, and no holders of Equity Interests, filed a timely objection. In accordance with the Court's *Order Revising Plan Confirmation Deadlines* [Docket No. 161], the Court treated the Initial Confirmation Hearing as a scheduled hearing concerning confirmation of the Plan and the Confirmation Hearing was set for December 22, 2011 (as noted above). The Plan (as revised by the November 29, 2011 modifications), among other things, seeks approval of the Debtor's Settlement Agreement with Porter's Point, LLC ("Porter's Point") attached as Exhibit 2 to the Plan (the "Porter's Point Settlement") and, on December 1, 2011, the Debtor provided sufficient and adequate notice of the Plan, the Confirmation Hearing, the Porter's Point Settlement, and the opportunity to object to the Porter's Point Settlement by serving the *Notice of Hearing on Debtor's Request for Approval of Settlement Agreement with Porter's Point, LLC* [Docket No. 156] upon all parties in interest appearing on the mailing matrix in the Bankruptcy Case. No other or further notice of the Plan, the Porter's Point Settlement, or the Confirmation Hearing is or shall be required.

D.  <u>Solicitation</u>.  The solicitation of votes for acceptance or rejection of the Plan complied with §§ 1125 and 1126,[3] Fed. R. Bankr. P. 3017 and 3018, the Disclosure Statement, all other applicable provisions of the Bankruptcy Code, and all other rules, laws, and regulations. Based on the record before the Court in this Bankruptcy Case, the Debtor and its general partners, attorneys and other professionals have acted in "good faith" within the meaning of § 1125, and are entitled to the protections afforded by § 1125(e).

E.  <u>Distribution</u>.  All procedures used to distribute the solicitation materials to the applicable holders of Claims and to tabulate the ballots were fair and conducted in accordance with the Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the local rules of the Bankruptcy Court, and all other rules, laws, and regulations.

F.  <u>Creditors' Consent to Plan</u>.  As evidenced by the appearances of counsel for Zions Bank and Porter's Point at the Confirmation Hearing and their signed consents to these Findings and Conclusions as indicated below, both Zions Bank and Porter's Point, who are the only Creditors entitled to vote on the Plan, now consent to and support confirmation of the Plan as expressly modified in the accompanying Confirmation Order (the "Confirmed Plan"). Accordingly, upon entry of the Confirmation Order, the objections to confirmation filed by Zions Bank [Docket No. 150 respecting the August 31 Plan and Docket No. 168 respecting the Plan] are deemed withdrawn, the ballot of Zions Bank rejecting the August 31 Plan is deemed withdrawn, Zions Bank is deemed to have cast a ballot accepting the Confirmed Plan, and the ballot of Porter's Point accepting the August 31 Plan is deemed to be a ballot accepting the Confirmed Plan.

---

[3] Unless otherwise provided, all references to statutory sections in these Findings and Conclusions using the section symbol "§" are to the relevant sections of the Bankruptcy Code.

{00135926.DOCX / }  4

G. <u>Plan Complies with Bankruptcy Code</u>. The Confirmed Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying § 1129(a)(1).

    i. <u>Proper Classification</u>. The Claims or Equity Interests placed in each Class are substantially similar to other Claims or Equity Interests in each such Class. The Confirmed Plan properly classifies Claims and Interests. In addition to Administrative Expense Claims and Priority Tax Claims, which are not classified under the Confirmed Plan, the Plan designates two Classes of Claims and one Class of Equity Interests. Article III of the Plan provides for the separate classification of Claims and Interests into three distinct Classes based on differences in their legal nature or priority:[4] Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Confirmed Plan, and such Classes do not unfairly discriminate between holders of Claims or Equity Interests. Thus, the Confirmed Plan satisfies §§ 1122 and 1123(a)(1).

    ii. <u>Specify Unimpaired Classes</u>. The Confirmed Plan specifies that Class 3 is not impaired and, thus, § 1123(a)(2) is satisfied.

    iii. <u>Specify Treatment of Impaired Classes</u>. Classes 1 and 2 are designated as impaired under the Confirmed Plan. Article IV of the Confirmed Plan specifies the treatment of impaired Claims, thereby satisfying § 1123(a)(3).

    iv. <u>No Discrimination</u>. The Confirmed Plan provides for the same treatment for each Claim and Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to less favorable treatment with respect to such Claim or Equity Interest, thereby satisfying § 1123(a)(4).

---

[4] In accordance with Bankruptcy Code § 1123(a)(1), Administrative Expense Claims and Priority Tax Claims were not classified.

{00135926.DOCX / }      5

v.  <u>Implementation of Plan</u>. The Confirmed Plan provides adequate and proper means for implementation of the Confirmed Plan, thereby satisfying § 1123(a)(5).

vi.  <u>Required Corporate Charter Provisions</u>. The Confirmed Plan complies with § 1123(a)(6) because the Debtor is a limited partnership, not a corporation, and thus no corporate charter provisions are required in the Confirmed Plan.

vii.  <u>Selection of Officers and Directors</u>. The Debtor does not have officers or directors, but the identity and affiliations of the Debtor's four general partners have been disclosed, satisfying the requirements of § 1123(a)(7) (to the extent applicable).

viii.  <u>Additional Plan Provisions</u>. The Confirmed Plan's provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including provisions respecting (a) executory contracts and unexpired leases, (b) settlement of the Porter's Point dispute, and (c) modification of the rights of holders of Secured Claims, thus satisfying the requirements of § 1123(b).

ix.  <u>Fed. R. Bankr. P. 3016(a)</u>. The Confirmed Plan is dated and identifies the entity submitting it, thereby satisfying Fed. R. Bankr. P. 3016(a).

H.  <u>The Debtor Has Complied with Bankruptcy Code</u>. The Debtor has complied with the applicable provisions of the Bankruptcy Code, thereby satisfying § 1129(a)(2).

i.  The Debtor is a proper proponent of the Confirmed Plan under § 1121(c).

ii.  The Debtor has complied generally with applicable provisions of the Bankruptcy Code.

iii.  Specifically, the Debtor has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and other orders of the Court in transmitting the

Plan and the Confirmed Plan, the Disclosure Statement, the ballots and related documents and notices, and in soliciting and tabulating votes on the Plan and the Confirmed Plan.

I. <u>Plan Proposed in Good Faith</u>.  The Debtor proposed the Confirmed Plan in good faith and not by any means forbidden by law, thereby satisfying § 1129(a)(3).  In determining that the Confirmed Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Bankruptcy Case and the formulation of the Confirmed Plan.  The Debtor proposed the Confirmed Plan with the legitimate and honest purposes of, among other things, reaching a fair, equitable, and expeditious resolution of the complex business and legal issues presented by this Bankruptcy Case.

J. <u>Payments For Services Or Costs And Expenses</u>.  Any payment made or to be made under the Confirmed Plan for services or for costs and expenses in or in connection with the Bankruptcy Case prior to the Effective Date, including all fees and expenses incurred by Professionals, or in connection with the Confirmed Plan and incident to the Bankruptcy Case, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying § 1129(a)(4).

K. <u>Directors, Officers, and Insiders</u>.  The Debtor has no officers or directors, but the identity and affiliations of the Debtor's four general partners have been disclosed.  The service of the Debtor's general partners post-confirmation is consistent with the interests of the holders of Claims and Equity Interests and with public policy.  Therefore, the Debtor has complied with § 1129(a)(5).

L. <u>No Rate Changes</u>.  The Confirmed Plan satisfies § 1129(a)(6) because the Confirmed Plan does not provide for any change in rates over which a governmental regulatory commission has jurisdiction.

M. <u>Best Interests of Creditors Test</u>. The Confirmed Plan satisfies § 1129(a)(7) because each Class of Claims that is impaired and entitled to vote under the Confirmed Plan has voted, or is deemed to have voted based on its consent to the Confirmation Order, to accept the Plan as modified in the Confirmation Order, which modifications have resulted in the Confirmed Plan.

N. <u>Acceptance by Certain Classes</u>. Classes 1 and 2 each voted (or is deemed to have voted) to accept the Confirmed Plan, thereby satisfying § 1129(a)(8).

O. <u>Treatment of Administrative Expense Claims and Priority Tax Claims</u>. The Confirmed Plan satisfies the requirements of § 1129(a)(9) because, except to the extent the holder of a particular Claim agrees to a different treatment of such Claim, the Plan provides that Administrative Expense Claims pursuant to § 507(a)(1) and Priority Claims pursuant to §§ 507(a)(2) through 507(a)(8) shall be treated in accordance with the provisions of § 1129(a)(9).

P. <u>Acceptance by at Least One Impaired Class</u>. Classes 1 and 2 of the impaired Classes of Claims have voted (or are deemed to have voted) to accept the Confirmed Plan, and the acceptance of at least one of such accepting impaired Classes has been determined without including the votes of any insiders, thus satisfying § 1129(a)(10).

Q. <u>Feasibility</u>. The Confirmed Plan is feasible and complies with § 1129(a)(11) because confirmation is not likely to be followed by a liquidation (except as provided in the Confirmed Plan) or further financial reorganization. The Debtor has presented credible evidence that it will be able to make the payments required under the Confirmed Plan and otherwise will be able to satisfy its obligations under the Confirmed Plan.

R. <u>Payment of Fees</u>.  All fees payable under 28 U.S.C. § 1930 have been paid or will be paid on or before the Effective Date pursuant to Section 2.2(b) of the Confirmed Plan, thereby satisfying § 1129(a)(12).

S. <u>Continuation of Retiree Benefits</u>.  The Confirmed Plan complies with § 1129(a)(13) because it has no retirees and owes no retiree benefits.

T. <u>Fair and Equitable; No Unfair Discrimination</u>.  Compliance with § 1129(b) is not required because each impaired Class has voted to accept the Confirmed Plan.

U. <u>No Other Plan</u>.  No other Chapter 11 plan is pending before the Court in this Bankruptcy Case and so § 1129(c) does not apply.

V. <u>Principal Purpose of Plan</u>.  The principal purpose of the Confirmed Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933 (15 U.S.C. § 77e).  Therefore, the Confirmed Plan satisfies the requirements of § 1129(d).

W. <u>Plan Settlements</u>.  In accordance with § 1123(b)(3)(A) and Fed. R. Bankr. P. 9019, the Confirmed Plan will (among other things) result in approval of the Porter's Point Settlement.  In entering into the Porter's Point Settlement, the Debtor considered: (i) the probability of success in litigating against Porter's Point regarding its claim in the Bankruptcy Case; (ii) the potential difficulties in collecting on any affirmative claims (if any) against Porter's Point; (iii) the complexity and likely expense and duration of such litigation as well as the inconvenience and delay resulting from such litigation, and (iv) the paramount interests of the Creditors and holders of Equity Interests, including the inability to move forward with a confirmable plan without the support of either Porter's Point or Zions Bank.  The settlement of the Porter's Point dispute is well within the range of the Debtor's sound business judgment, and the Debtor has made a good-faith determination that the compromises, settlements, waivers and

releases contained in the Porter's Point Settlement should be approved as part of the Confirmed Plan in the best interest of the Debtor, its estate, and all parties in interest.

X. The Court stated other findings of fact and conclusions of law on the record at the hearing, which findings and conclusions are incorporated herein by reference.

----------------------------------END OF FINDINGS AND CONCLUSIONS----------------------------

